D. E. HARVEY, Plaintiff and Appellee, v. JOHN HAIN and CHARLES PETERS, Defendants and Appellants.

Contract for sale of land: AGENCY: COMMISSION: EVIDENCE. In this
1  action to recover a commission for procuring a purchaser of land, which the owner conveyed to a purchaser procured by another agent, the evidence as to which agent first reported a sale that was ratified by the owner is held to authorize a verdict for the plaintiff.

**Same:** RECOVERY OF ADDITIONAL COMMISSION. Where the owner of the land and an agent agreed upon the commission in case of a sale, and further agreed that if the agent procured another to assist in making the sale the owner should pay such other agent an additional commission, evidence merely that the original agent took a party with him when showing the land, who simply pointed out the location of the tile laid in the land, was not sufficient to authorize recovery of the additional commission by the original agent.

*Appeal from O'Brien District Court.*—HON. JOHN F. OLIVER, Judge.

THURSDAY, NOVEMBER 5, 1914.

ACTION at law to recover a commission for procuring a purchaser of real estate. There was a verdict for the plaintiff, and defendants appeal.—*Reversed* and *Remanded.*

*Simon Fisher,* for appellants.

*T. E. Diamond,* for appellee.

EVANS, J.—The defendants Charles Peters and John Hain were the owners of a quarter section of land in Nobles county, Minn. The full title was in Peters. Hain, however, owned a one-third interest therein, and Peters the remaining two-thirds. The plaintiff, Harvey, was a real estate agent located at Sheldon, where all the parties lived. The land was listed for sale with Harvey. It was also listed for sale with Tom Smith, another real estate agent in the same town, and this was known to Harvey. There is a dispute between the parties as to the terms of sale at which the farm was listed, and as to the extent of the commission to be paid. We need not dwell upon the details of such dispute, because they are necessarily covered by the verdict, and they present no question of law for our consideration.

It was the contention of the defendants on the trial that report of sale was to be made to Peters. This was denied by

the plaintiff. The last conversation was had between the parties on the subject on May 27, 1911. It was claimed by the plaintiff that on Monday, May 29th, he procured a satisfied purchaser for said farm, having first taken him thereto to view the same. The purchaser was Murphy. The contract was reduced to writing on May 31st, and signed by Murphy, and a check of $800 delivered to the plaintiff, Harvey. This proposed sale was not reported by the plaintiff to either of the defendants at any time before June 3d. On June 3d, the other agent, Tom Smith, sold the land to another purchaser and reported the same forthwith to Peters. On the same day Harvey reported his sale, first to Hain and later to Peters. Peters had already ratified the sale by Smith before he knew of the alleged sale by Harvey. It is the claim of plaintiff that Hain had ratified his sale before Peters had ratified the other. The farm was duly conveyed to Smith's purchaser, and the regular commission was paid to Smith.

After a verdict for the plaintiff, the defendants asked for a new trial upon various grounds. One of these was that upon the whole record and the evidence the plaintiff was not entitled to any verdict. This ground is now argued before us. The explanation offered by plaintiff for his long delay in reporting his alleged sale is not very plausible. The only reason given is that the parties were away from home. They were, nevertheless, accessible. On Saturday evening, June 3d, Harvey, Peters, and Hain had a conversation, which was testified to by Harvey as follows:

1. CONTRACT FOR THE SALE OF LAND: agency: commission: evidence.

Mr. Peters says: 'We got kind of mixed up on this land deal—two sales on hand; we don't know where we are at. John told me he accepted your sale, and I accepted Smith's; we are afraid that he was the first man sold it.' And he says: 'When I got home I found word for me to come in; I was in a sweat; I didn't know what to do, or what to think; I didn't know whether John had accepted any money or not.' He had a check. And I explained to Mr. Peters and Mr. Hain, and told them just how the thing happened, and how he

accepted the sale in the morning, and Mr. Peters told about Mr. Smith getting on the train in the afternoon or evening, and going west, and meeting him, and hollered to him, as soon as he saw him, 'I have sold your farm,' and he said he handed him a check for $100. And Mr. Peters says: 'It is so late we cannot do anything to-night. We will all get together Monday morning, and will talk the matter over and see who sold it first.' He says, 'I will see Mr. Scott—he is a land man and had a good deal of experience—and ask him who should have this sale.' Mr. Scott told him, 'The first man that got the buyer.' Mr. Hain said, 'That will let you out, Harvey.' I said, 'That is all I want.' So we were to meet Monday morning. . . . Hain said: 'We will get together Monday, and you get your contract and check. I accepted your sale, and will stay by it.' That is about all that was said that evening. I saw Peters the following Monday morning, but had no conversation with him. I was standing on the street, and he was with Tom Smith, going towards Smith's office. I passed him on the street. He spoke to me when he passed; asked me if I knew where Hain was. I said, 'No.' He said, 'Find him, if you can, and tell him to come to Smith's office.' I told him I would, and I did; did not ask me to go to Smith's office; had no further talk with Peters until after the land was transferred, and had no further talk with Hain after that Sunday. James Murphy is the man who is willing to buy the land, and lives about seven miles northeast of Sheldon. He is a farmer. He never refused to take the land. I do not know a lot about his financial condition. I know he had money to make the payment; has a lot of stock, good horses, and machinery; check was drawn on the First National Bank of Sheldon. The check was cashed by myself. I made demand for my commission on Peters, just after he transferred the land to the other man, and he gave me no satisfaction; also made demand on Hain. Both Peters and Hain came to my office in response to a letter about a month after the land was sold. They came together. Peters said, 'I want to talk to you fellows together.'

Plaintiff further testified as follows:

Q. And you never, except on Saturday, June 3d, you never offered the memorandum and check to Hain? A. Never offered it to anybody. Q. Just that one time you tendered it

or offered it to Hain, and he looked it over and handed it back to you? A. Yes. Q. The memorandum, Exhibit A, was drawn in the name of Mr. Peters? A. Yes, sir. Q. You knew you would have to see Mr. Peters, didn't you? A. Yes, sir. Q. And you knew that the contract could not become effective until you had seen Mr. Peters, and got his signature, didn't you? A. I did. Q. And therefore you knew that you could not make any binding contract with this man until you had located Mr. Peters, and got him in, and got him to sign this contract, didn't you? A. Yes, sir. Q. Approve and sign it? A. Yes, sir.

No objection appears to have been made upon Monday to the consummation of the sale made by Smith. It does not appear that Murphy presented himself at any time, or that he ever tendered or demanded performance, other than the signing of the papers referred to and leaving them in the hands of Harvey. Harvey had other negotiations with Murphy which were consummated a short time thereafter.

Other circumstances appear which are capable of an unfavorable significance. It must be conceded that the circumstances shown, in the light of plaintiff's delay in reporting his alleged sale until another had been made, are calculated to create grave suspicion that Murphy's contract and check were intended to secure a commission for Harvey rather than the land for Murphy. There is a certain incongruity of statement in plaintiff's testimony as a witness, which would not ordinarily be convincing to the inquiring mind. His recital of the negotiations leading up to the alleged sale to Murphy concludes as follows:

Murphy said he would take the land and inquired what the terms were.

Such question, however, was a question of fact resting upon a conflict of evidence, and it was necessarily left to the determination of the jury. We cannot say, therefore, that the verdict was wholly without support in the evidence.

II. The plaintiff claimed a commission of $2 per acre, and

the jury rendered a verdict in his favor for the full amount
thus claimed.    The contract for a commission provided
primarily for a commission of only $1 per
2. SAME: re-
covery of ad-        acre.    It was claimed by the plaintiff that
ditional com-
mission.             there was a further proviso whereby the
plaintiff, in a certain contingency, should be entitled to recover
$2 per acre.    This proviso was wholly denied by the defend-
ants, both by pleading and by evidence.    The provisions of the
contract at this point are set forth by the plaintiff in his
petition as follows:

The said premises to be sold at such price as to net the
defendants the sum of $74 per acre, and giving the plaintiff
the right to sell the said premises at the price of $75 per acre
and retain the sum of $1 per acre as his commission for
procuring such purchaser; and if the plaintiff desired the
assistance of a third person in procuring a purchaser for said
premises on the terms aforesaid, and such assistance is actually
procured by him, then and in that event the plaintiff was
given the right and power to sell said premises on the above
terms at the price of $76 per acre, and he, together with such
other person, to retain all overplus over and above the sum of
$74 per acre; it being understood and agreed by and between
the parties that the defendants were to have $74 per acre net
to them.

The petition also averred as follows:

That in order to procure such purchaser for the said
premises as aforesaid the plaintiff procured the help and
assistance of one J. H. Staubus, of Worthington, Minn., who
did help and assist the plaintiff herein in the matter of finding
and procuring a purchaser for the said premises as aforesaid.

In support of this alleged provision of the contract plain-
tiff, Harvey, testified as follows:

There was something said at that time between me and
Hain about me getting another man to help sell land.    When
listed with me, Hain told me they would list it exactly as with
Tom Smith, and it was listed with Tom Smith for $75 an

acre, and they were to give him $1 an acre if he sold the land, and if he got any one to assist him in making this sale that they were *to protect that man in the $1 an acre commission,* but whether he sold it himself, or had some one else to help him, the owners were to receive $74 an acre net to them; that is, he was to get $1 per acre besides his own commission, and was selling the land for $76 per acre, and the defendants were to get $74 net, if witness sold it for $76. The defendant Peters owned two-thirds and Hain one-third interest in said land. . . . They wanted $74 per acre. If I sold it myself, I was to get $1; but if I got another man to help me, *I was to protect him with $1.* If I sold it myself, or with some one else to help me, Peters and Hain were to receive $74 an acre net to them.

Assuming the sufficiency of the evidence to prove such provision of the contract as alleged by plaintiff, it is nevertheless urged by the defendants that there was no evidence to support a recovery for the additional $1 per acre under such provision. It is made to appear that Harvey took Murphy, who was a resident in the neighborhood of Sheldon, to the farm to view the same. At the end of the railroad trip he employed an automobile driver to take them to the farm. He also took along Staubus, who was familiar with the location of the tile upon the farm. Plaintiff's testimony at this point was as follows:

I solicited Murphy to buy the farm, took him up to Worthington, and got Mr. Staubus, a man that lives up there, and got an auto and went out and looked the farm over. We showed Murphy the place and grove and orchard, and all over the farm. Mr. Staubus pointed out that there had been lots of tile, and Mr. Staubus showed him where the tile started, and the main line and where the branches ran into it, at the sides of the tile, and where their outlet was, and showed him all the advantages we could on the place. I could not show Murphy where the tile were, because it had been tiled two or three years, and there were growing crops on it. Murphy said he would take the land and inquired what the terms were.

Murphy testified on behalf of plaintiff as follows:

Staubus, Harvey, and I drove out to the place, and we looked the farm over. Q. What did Staubus do when you were going around the farm, looking at it? A. Well, he was with us. Q. What, if anything, did he show you in particular? A. Well, he did not show me anything. Q. Do you remember as to whether or not he showed you anything at the time on the place? A. Yes; there were tile; we walked over the tile. Q. He showed you those? A. Well, both of them—well, of course, he [Staubus] understood it better than Harvey. After we had looked the place over, I told him it suited me. The memorandum of agreement, Exhibit A, contains all the terms that were agreed upon between Harvey and me with reference to the condition under which I was purchasing the land, which memorandum of agreement is dated May 31st, and Harvey showed me the land I think about two days before the date of the contract, and I think I signed it on the date it bears. Q. Well, did you look at another farm up there that day, and didn't you make a contract for another place? A. That is my business. Q. When was that? A. Well, that was after that. Q. Was that with Mr. Harvey? A. Yes, sir.

The foregoing comprises all of the evidence on this question. We are very clear that the assistance rendered by Staubus was not such as was contemplated by the contract, as set up by the plaintiff in his petition, and as testified to by him as a witness. The manifest intent of such provision, according to plaintiff's own showing, was to provide an additional commission for an additional agent in the contingency of such a necessity. It is not claimed that Staubus had any right to this additional commission. Plaintiff assumed to collect it wholly as for himself. Staubus had nothing to do with "procuring a purchaser." The claim for a double commission might as well have been based upon the assistance of the automobile driver; If the first showed them the location of the tile, perhaps the latter showed them the location of the farm.

To permit the commission to be doubled upon such a pretext would be to close our eyes to a palpable wrong. We

must hold, therefore, that this part of plaintiff's recovery was without support in the evidence.

On this ground, the judgment below is accordingly *Reversed* and *Remanded.*

LADD, C. J., and WEAVER and PRESTON, JJ., concur.